UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:21-CR-00016-GNS

UNITED STATES OF AMERICA                                                                                       PLAINTIFF

v.

BARRY D. DYER; and MACKIE E. SHELTON                                                            DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DN 45, 46). The motions are ripe for adjudication. For the reasons outlined below, the motions are **DENIED**.

### I.     BACKGROUND

Defendants Barry D. Dyer and Mackie E. Shelton ("Defendants") were indicted by a federal grand jury for one count of violating the Sherman Act, 15 U.S.C. § 1. (Indictment ¶ 6, DN 1). In particular, the Indictment charges that Defendants engaged in a conspiracy relating to an auction with unidentified individuals referred to as Individuals 1 and 2 as follows:

   a.     Defendants demanded a $40,000 payoff from Individuals 1 and 2 in exchange for an agreement to stop bidding against Individuals 1 and 2 at the Auction;
   b.     Despite being warned by auction staff not to engage in the conduct, Individuals 1 and 2 agreed to make the $40,000 payoff to Defendants, and, in exchange, Defendants agreed to stop bidding and let Individuals 1 and 2 win the Auction;
   c.     Individuals 1 and 2 placed a final bid while Defendants stopped bidding;
   d.     Individuals 1 and 2 won the Auction at a non-competitive, artificially suppressed price;
   e.     After winning the Auction, Individuals 1 and 2 made the agreed $40,000 payoff by writing checks to Defendants, which Defendants accepted;

1

       f.    To complete the purchase of the auctioned property at the non-competitive, artificially suppressed price, Individuals 1 and 2 obtained a mortgage and title insurance; and

       g.    Defendants waited until in or about June 2018, when the sale of the auctioned property was completed, to deposit the checks from Individuals 1 and 2 totaling $40,000.

(Indictment ¶ 7). In addition, the Indictment charges:

> The Auction and the activities of Defendants and their co-conspirators that are the subject of this Indictment were within the flow of, and substantially affected, interstate trade and commerce. For example, among other things:
> 
>     a.    Defendants were real-estate investors engaging in ongoing interstate business activities related to auctions and real-estate investments, and they participated in the Auction as part of those ongoing activities;
> 
>     b.    Individuals 1 and 2 were farmers engaged in ongoing interstate business activities related to acquiring and cultivating farmland to produce and sell agricultural products in interstate markets, and they participated in the Auction as part of those ongoing activities;
> 
>     c.    The $40,000 bid-rigging payoff to Defendants consisted of two $20,000 checks. The first was a $20,000 check from Individual 1 to DYER drawn on, and deposited to, a federally chartered national bank insured by the Federal Deposit Insurance Corporation ("FDIC"). The second was a $20,000 check from Individual 2 to SHELTON drawn on a credit line from Farm Credit Mid-America, payable through a federally chartered national bank insured by the FDIC, and deposited to a bank insured by the FDIC. Farm Credit Mid-America is a multistate component of the Farm Credit System, a national network of cooperative financial institutions established by the federal government, governed by the Farm Credit Acts, regulated by the Farm Credit Administration, and insured by the Farm Credit System Insurance Corporation;
> 
>     d.    Individuals 1 and 2 financed the property purchase resulting from the rigged Auction with a substantial mortgage from Farm Credit Mid-America that was tied to the non-competitive, artificially suppressed purchase price of the property;
> 
>     e.    In connection with the mortgage, Individuals 1 and 2 also acquired cooperative shares of Farm Credit Mid-America in a substantial amount tied to the noncompetitive, artificially suppressed purchase price of the property;
> 
>     f.    To complete the sale of the auctioned property, Individuals 1 and 2 purchased title insurance from an interstate insurance company and transmitted, and caused to be transmitted, funds outside Kentucky; and
> 
>     g.    Substantial proceeds of the non-competitive, artificially suppressed purchase price of the property were transmitted to a beneficiary outside Kentucky.

(Indictment ¶ 8).

## II.   STANDARD OF REVIEW

Under Fed. R. Crim. P. 12(b), "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). This rule, however, limits the pretrial defenses a party may raise to those "the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A court can resolve a motion to dismiss without a trial "if it involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). In other words, a court may rule on a pretrial motion to dismiss and may make preliminary factual findings necessary to decide questions of law raised therein, so long as the court's conclusions "do not invade the province of the jury." *Id.* (citation omitted).

It is well-settled, however, that a defendant cannot base a pretrial motion to dismiss on a sufficiency-of-the-evidence argument because such a motion raises factual questions best left for the jury. *See, e.g.*, *United States v. Levin*, 973 F.2d 463, 468 n.2 (6th Cir. 1992) ("[A] defendant may not challenge an indictment on the ground that it is not supported by sufficient evidence [before the grand jury] . . . ." (internal quotation marks omitted) (citations omitted)). Thus, "if a defendant's pretrial motion requires the court to find facts that make up the elements of the case which would normally be reserved to the jury . . . , the motion should be denied." *United States v. Cumberland Wood & Chair Corp.*, Nos. 91-6058 to 91-6060, 978 F.2d 1259, 1992 WL 317175, at *3 (6th Cir. 1992). In addition, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. McFarland*, No. 12-20398, 2012 WL 4953098, at *1 (E.D. Mich. Oct. 17, 2012) (citing *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)).

### III.  DISCUSSION

In their motions, Defendants challenge both subject matter jurisdiction and the sufficiency of the allegations in the Indictment. Neither basis warrants the dismissal of the Indictment in this case.

The interstate commerce element of the Sherman Act claim is not jurisdictional. "The federal courts' subject-matter jurisdiction to hear federal criminal prosecutions comes from 18 U.S.C. § 3231, which grants '[t]he district courts of the United States . . . original jurisdiction . . . of all offenses against the laws of the United States.'" *United States v. Titterington*, 374 F.3d 453, 458-59 (6th Cir. 2004) (alteration in original); *see also Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999) ("Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts. That's the beginning and the end of the 'jurisdictional' inquiry."). As a sister court has explained:

> Although courts commonly refer to this interstate commerce nexus requirement "as a 'jurisdictional element,' the failure of the government to prove a nexus between the crime and interstate commerce is not jurisdictional in a sense that it deprives the district court of subject matter jurisdiction." Instead, "a claim of an insufficient connection to interstate commerce is a challenge to one of the elements of the government's case and is therefore considered a claim about the sufficiency of the evidence."

*United States v. Ledbetter*, Nos. 2:15-CR-080 & 2:14-CR-127, 2015 WL 4941812, at *5 (S.D. Ohio Aug. 20, 2015) (internal citations omitted) (citing *United States v. Riddle*, 249 F.3d 529, 536 (6th Cir. 2001)). Thus, this argument lacks merit and does not support the dismissal of the Indictment.

Defendants also challenge the sufficiency of the allegations in the Indictment. As the Sixth Circuit has explained:

4

> To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.

*United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Coss*, 677 F.3d 278, 288 (6th Cir. 2012) (internal quotation marks omitted) (citation omitted). "However, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id*. (quoting *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001)).

In their motions, Defendants' challenge the interstate commerce element of the alleged crimes. In addressing the acts prohibited by the Sherman Act, the Supreme Court has explained:

> It is the 'contract, combination . . . or conspiracy, in restraint of trade or commerce' which § 1 of the Act strikes down, whether the concerted activity be wholly nascent or abortive on the one hand, or successful on the other. And the amount of interstate or foreign trade involved is not material, since § 1 of the Act brands as illegal the character of the restraint not the amount of commerce affected.

*United States v. Soconoy-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) (internal citations omitted) (citing *Steers v. United States*, 192 F. 1, 5 (6th Cir. 1911); *Patterson v. United States*, 222 F. 599, 618, 619 (6th Cir. 1915)). The interstate commerce element of the Sherman Act can be met either through the: (i) "in commerce test", where "the defendants' activity is itself in interstate commerce"; or (ii) "effect on commerce" test, which involves activity that is local in nature but that "has an effect on some appreciable activity demonstrably in interstate commerce." *Powell v.*

*Shelton*, 386 F. Supp. 3d 842, 847 (W.D. Ky. 2019) (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241-42 (1980)).

Regarding the "in commerce" test, Paragraph 8(a)-(c) of the Indictment alleges that: (i) Defendants engaged in ongoing interstate commerce through their auction and real estate investments, including the subject auction; (ii) Defendants engaged in ongoing interstate commerce relating to the production and sale of agricultural products in interstate markets and the auction was related to those activities; and (iii) the two $20,000 payments to Defendants were drawn on and deposited in a federally charted national bank insured by the Federal Deposit Insurance Corporation, and Farm Credit Mid-America, from which funds were drawn, "is a multistate component of the Farm Credit System, a national network of cooperative financial institutions established by the federal government, governed by the Farm Credit Acts, regulated by the Farm Credit Administration, and insured by the Farm Credit System Insurance Corporation . . . ." (Indictment ¶ 8(a)-(c)).

Defendants contend that the Court's prior decision in *Powell v. Shelton* and the discovery depositions from that case preclude the application of this test and undermine the allegations in the Indictment.[1] As the Sixth Circuit has explained, however, "courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *Landham*, 251 F.3d at 1080 (citing *Costello v. United States*, 350 U.S. 359, 362-63 (1956); *United States v. Powell*, 823 F.2d 996, 999-1001 (6th Cir. 1987); *United States v. Markey*, 693 F.2d 594, 596 (6th Cir. 1982); *United States v. Short*, 671 F.2d 178, 182 (6th Cir. 1982)). Thus, the Court rejects Defendants'

---

[1] Defendants' reliance on the deposition testimony in *Powell* or its holding is wholly improper. "A motion to dismiss is limited to the four corners the indictment . . . ." *United States v. Scott*, No. 10-20235, 2014 WL 7272755, at *2 (E.D. Mich. Dec. 18, 2014) (citation omitted).

improper invitation to go beyond the four corners of the Indictment, and Defendants' argument does not invalidate the finding of probable cause made by the federal grand jury in this case.

Likewise, the allegations in the Indictment are sufficient to satisfy the "effect on commerce" test. The pertinent allegations include: (i) the purchase of title insurance by Individuals 1 and 2 from an insurance company engaged in interstate commerce, which was paid for by funds transmitted outside of Kentucky; (ii) the transmittal of "[s]ubstantial proceeds of the non-competitive, artificially suppressed purchase price of the property . . . to a beneficiary outside [of] Kentucky"; (iii) Individuals 1 and 2 purchased cooperative shares of Farm Credit Mid-America that was connected to the price paid at the auction for the property; (iv) Individuals 1 and 2 financed the purchase of the property through Farm Credit Mid-America; and (v) the use of federally charted national banks as part of the alleged scheme. (Indictment ¶ 8(c)-(f)). The Indictment also alleges that Defendants were licensed as principal auctioneers in both Kentucky and Tennessee, and that Defendants' participation in the subject auction was part of their interstate real estate investment business activities. (Indictment ¶¶ 3, 8(a)). These allegations, if proven at trial, would be sufficient to show that Defendants' activities "ha[d] an effect on some other appreciable activity demonstrably in interstate commerce." *Powell*, 386 F. Supp. 3d at 847 (citation omitted); *see also Apex Hosiery Co. v. Leader*, 310 U.S. 469, 485 (1940) ("[I]in the application of the Sherman Act, . . . it is the nature of the restraint and its effect on interstate commerce and not the amount of the commerce which are the tests of violation." (citing *Soconoy-Vacuum Oil Co.*, 310 U.S. at 224 n.59)); *Tic-X-Press, Inc. v. Omni Promotions of Ga.*, 815 F.2d 1407, 1419 (11th Cir. 1987) ("[W]e conclude that the 'not insubstantial amount of interstate commerce' test is met even by the smallest figure proffered, the $10,091.07 in actual damages to TXP flowing from Jim Veal's promotions.").

> In rejecting similar arguments to Defendants' in a RICO case, this Court recently noted:
>
>> Defendant argues that the Indictment should be dismissed because there is insufficient evidence to establish he is a prohibited person pursuant to 18 U.S.C. § 922(g)(4) and that the firearms traveled in interstate commerce. Therefore, Defendant seeks to have this Court review the Indictment on impermissible grounds given that the Court cannot "review the sufficiency of the [evidence] that will be offered in support of the indictment's allegations" in a motion to dismiss the indictment. The Indictment sets out all of the elements of 18 U.S.C. § 922(g)(4), gives notice to Defendant of the charge he faces, and is sufficiently specific to enable Defendant to plead double jeopardy in a subsequent proceeding. Accordingly, this Court simply cannot dismiss an indictment, which is valid on its face, on the ground that it is based upon insufficient evidence.

*United States v. Easley*, No. 5:20-CR-1-TBR, 2020 WL 1310486, at *3 (W.D. Ky. Mar. 19, 2020) (alteration in original) (internal citations omitted) (citation omitted). Likewise, as a sister court stated:

> Defendants' challenges to the sufficiency of the Government's evidence are premature and, thus, procedurally improper under Federal Rule of Criminal Procedure 12(b)(1). Defendants' motions raise factual questions best left for the jury to decide.
>
> Indeed, district courts within this Circuit routinely confront the same arguments and just as routinely reach the same conclusion: "Defendant[s'] argument that the Government cannot prove the interstate commerce element of the crimes charged is not an appropriate basis for dismissal of those counts of the Indictment prior to trial."
>
> Whether Defendants "engaged in activities that affected interstate commerce, and the extent of any such effect," present factual issues for the jury to resolve and thus are "inappropriate for resolution on a motion to dismiss." The proper time, place, and manner for Defendants to raise their arguments are at the close of the Government's case-in-chief, through a Rule 29 Motion for Judgment of Acquittal.

*Ledbetter*, 2015 WL 4941812, at *6 (internal citations omitted) (citations omitted); *see also United States v. Leavell*, No. 3:14-CV-00200, 2016 WL 494335, at *3 (M.D. Tenn. Feb. 9, 2016) ("[T]he Defendant's argument that the Government cannot prove the interstate commerce element is not an appropriate basis for dismissal of the Indictment under Rule 12(b) prior to trial."); *see also McFarland*, 2012 WL 4953098, at *2 ("Indictments are not subject to dismissal based on whether

8

the evidence supporting the indictment is insufficient or whether the government will not be able to prove its case at trial." (citing *United States v. Powell*, 823 F.2d 996, 1000-01 (6th Cir. 1987))). Accordingly, the motions will be denied.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (DN 45, 46) are **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

January 5, 2022

cc: counsel of record